Aug. 12,
1875.    CHASE v. BOODY.

*Bailment for hire—Degree of care.*

C. bailed to B. a horse, for hire, to convey him from D. to S.  B., upon arriving at S., put up the horse in a proper place, and the next morning properly watered, fed, and cared for her, and left her, intending to return, and in fact returning, within a suitable time to care for her, but having reason to apprehend that A., sixteen years of age, would attempt to water the horse during his absence.  A. turned the horse loose to water her, and the horse, in consequence thereof, became lamed. *Held*, that these facts showed no evidence of lack of ordinary care and prudence on the part of B., and that he was not liable to C. for the damages.

CASE, to recover for injuries to the plaintiff's horse.  The action was tried by STANLEY, J., who found the following facts:

The writ is dated July 7, 1874.  Plea, the general issue.  On or about August 9, 1873, the defendant hired of the plaintiff, a livery stable keeper, a horse and carriage to go from Dover to Strafford, in said county.  There was no price agreed for the service.  On the afternoon of the same day he arrived at said Strafford, and put his horse in a private farm barn belonging to a Mrs. Caverly, where it remained over night.  The next morning the defendant, having some business

to transact in town, procured another horse of one of the neighbors, and, leaving the plaintiff's horse in the barn, went away about half past seven in the forenoon to attend to his business, having in the first place properly fed and watered it, and giving no directions as to the care of it, he intending to return about noon, and in season to take care of it, which he in fact did. In his absence, a boy about sixteen years old, residing with Mrs. Caverly, on going to the barn, thinking the horse wanted water, turned her loose in the barnyard, when she immediately began to run around the yard, and finally jumped over the bars and ran down the road, and was seriously injured in one of her hind legs, so much so that the defendant was unable to drive her home, and she has not been fit to use for purposes of letting since. The boy testified, in substance, that he had been accustomed to care for the horses put up at that place, and that on the day in question there was no one else there to care for the plaintiff's horse but himself. It also appeared that the defendant, when he went away that morning, knew that the boy was at home. There was no evidence that the defendant informed the boy or any one else when he intended to return to Mrs. Caverly's, or that he should return in season to take care of the horse. The court find that it was negligence to let the horse loose in the manner in which it was let loose, and that this negligence caused the injury complained of; that the boy who let the horse loose had no authority from the defendant to do so, and what he did was without the knowledge of the defendant; and that the boy's interference with the horse was with no malicious intent, but was, under all the circumstances attending the boy's being at Mrs. Caverly's, and the circumstances and silence of the defendant in leaving the horse there, natural, and what it would be reasonable to apprehend he would do. The defendant, some days after the injury and after the plaintiff knew of it, called at the plaintiff's place of business and paid for the use of the horse. At that time the plaintiff made no claim for damages, and the horse had not then been returned. The defendant offered to prove the custom of taking care of horses at Mrs. Caverly's barn; but the plaintiff objected, and the court sustained the objection, and the defendant excepted.

Upon the foregoing facts, the court find that the defendant is guilty in manner and form as the plaintiff has declared against him, and assess the damages in the sum of two hundred dollars, which the defendant moves to set aside and for a new trial.

The questions of law arising on the foregoing case were transferred to the superior court for determination.

*Copeland*, for the defendant.

The case finds that "in the morning the defendant properly fed and watered the horse," and intended to return about noon in season to take care of the horse, and in fact did return about noon, in season to take such care, and for that purpose: then the defendant did not neglect the horse. The case further finds, that the boy who let the

horse loose had no authority from the defendant to do so, and what he did was without the defendant's knowledge. We submit that he was in no sense the servant of the defendant.

This evidence justifies an inference consistent with the absence of negligence on the part of the defendant, and the plaintiff cannot recover. *Smith* v. *Bank*, 99 Mass. 605. No one is liable for the negligence of another, unless the latter is his servant or agent. *Stevens* v. *Armstrong*, 6 N. Y. 435; Shear. & Redf. on Neg. 73.

This case finds that the boy had no authority to act. A person cannot be agent or servant unless he is authorized to act as such, and, as the case expressly finds that there was no authority or even knowledge, none can be presumed; and the fact that the defendant in the morning took care of the horse himself, shows that he constituted no one his agent or servant for that purpose, and was notice to all persons about the premises that he had no servant, but acted and intended to act himself. The custom of taking care of horses at the barn should have been received to show that the boy had no authority to act, and was not accustomed to act, unless horses were delivered into his custody. We submit that, if the plaintiff seeks to make us liable for the acts of the boy because the boy was accustomed to care for horses at the barn, the whole custom should have been allowed to be shown.

*Hobbs*, for the plaintiff.

The case having been tried by the court, no exception lies to the finding of facts. 1 Allen 388; *Burnham* v. *McQuesten*, 48 N. H. 451; 10 Grey 400; 3 Allen 213, 337;—see, also, *Bowman* v. *Sanborn*, 25 N. H. 105, expressly deciding that the court above cannot revise questions of fact found by the court below, unless the questions of fact are reserved. In the case at bar, questions of law are alone reserved. Whether the defendant was guilty of negligence, was a question of fact not open to revision in this court. *Palmer* v. *Portsmouth*, 43 N. H. 265. The position of the defendant's counsel, that the defendant is not liable because the boy who turned the horse out was not the agent of the defendant, is of no importance, as it is not on that ground that the plaintiff stands. When the defendant left in the morning, he notified no one when he was to return, or that he should be back in season to care for the horse. He knew the boy was there. He did not say " to the boy or any one else " when he should return. Under these circumstances, he knew, or at least would be charged with, the responsibility of what would probably happen in such circumstances, to wit, that, when the horse became dry, some one would water him; that in all probability the boy would do so. What was more natural than that what was done should be done? If a party stables a horse at a place where horses are put up, and goes away and leaves the horse without saying to any one when he intends to return, he would " reasonably apprehend, as a result " of his silence and absence, that, at the proper time, the person who usually cared for horses so put up would care for his.

This was a stable horse, and not used to the scenery of rural barn-yards or to being turned out loose; and what would be due care as to a farm horse might be gross negligence in the treatment of a stable horse: and the court has found negligence in the use of the plaintiff's horse;—and that being what was "reasonably to have been expected" from the defendant's unusual and singular conduct in leaving the horse as shown, by law the defendant is holden for the acts of the boy, and that, too, when not the defendant's agent; and directly in point are *Lane* v. *Atlantic Works*, 111 Mass. 139, 140, and 107 Mass. 104, and *Ricker* v. *Freeman*, 50 N. H. 428, citing *Scott* v. *Shepherd* to the same doctrine.

The case cited by the defendant, 99 Mass. 605, is not in point. In that case, the theft was not "reasonably to be apprehended" from the bank's having selected a party as cashier. There was no negligence in the selection: it was not reasonable to suppose he would steal;—but in the case at bar, it was reasonable and natural that some one should look after the horse left as this plaintiff's was, with no intimation that the defendant was coming back to care for him. In 6 N. Y. 485, the defendant had no connection with the act done at all, and his act of selling goods to one man does not give rise to any reasonable grounds to suppose the vendor is about to drop the goods upon any one's head: such is not the natural sequence; it is not what a reasonable person would do or expect. By the verdict, the court has in fact found that the act of the boy was what might be reasonably apprehended from the defendant's conduct, and the verdict must stand. We opine the court would not be long in concluding that if the defendant had remained a week, and some one had not seen to the horse, Mrs. Caverly would be holden for any damage to the beast, for the defendant would have the right to expect the horse to be cared for. In a nutshell, the trial justice must have thought that the defendant, when he left the horse at Caverly's, ought, as a reasonable man, to have apprehended that some one present would attempt to see to the horse. The case cited in 111 Mass. is exactly in point. The court there held that the party, who left the team loaded in the street, must be held, as a reasonable man, to have apprehended that some one might intermeddle with it. In that case there was no apparent necessity for the interference of the boys: the iron was not hungry, nor thirsty, although it may have been dry. In the case at bar, the comfort of the beast, the dictates of humanity, all seemed to call for some act, some prudent act, on the part of the boy, to quench the thirst of the horse. It is common experience that you naturally expect to, and do, water a horse when thirsty. In August, if at any time, you would "apprehend" that a horse would be thirsty. The fact that the defendant left so early and said nothing, would lead any one to try to water the horse. The case at bar is even stronger than the case 111 Mass., cited. In the Massachusetts case, there was nothing inherent in the nature of the load on the cart calling upon any one to intermeddle with it: all there was in that case was, boys would be likely to fuss with a load left as that was, and the defendant was charged with what was reasonably to have been apprehended from

leaving the load as he did, even though unauthorized intermeddling. In the case at bar there is the additional element, that the nature and health of the horse demanded attention—authorized or unauthorized, matters not to the plaintiff. Upon both authority and principle, the defendant, under the circumstances of this case, is chargeable with the unauthorized intermeddling of the boy as being a natural sequence of the defendant's conduct in leaving the horse of the plaintiff as he did; and there being evidence upon which the trial justice could so find, this court cannot revise this finding.

SMITH, J. This was a bailment for hire, and the plaintiff was bound to use ordinary diligence and care in the protection of the property hired. What ordinary diligence is, varies in degree according to the nature of the property and the circumstances of each particular case. It means "that degree of care, attention, and exertion, which, under the circumstances, a man of ordinary prudence and discretion would exercise, in reference to the particular thing, were it his own ; or which the generality of mankind use in keeping their own goods of the same kind." 2 Hill. on Torts, ch. 29, sec. 8, p. 610, citing *Mayor, &c.,* v. *Howard,* 6 Geo. 213.

The judge, who tried the cause without a jury, has reported the facts found ; and the question transferred is, whether, upon the facts reported, the defendant used ordinary care and diligence in the care of the plaintiff's horse. It appears that, on the morning of the day the horse was injured, he was properly fed and watered at a seasonable hour by the defendant, and was left in a suitable place ; that the defendant went away, giving no directions to any one to care for the horse, expecting to return in season to attend to it himself, which he in fact did ; that he knew the boy was at home, but he informed no one when he should return, or that he should return in season to attend to the horse himself ; that the boy's interference with the horse was with no malicious intent, and was, under the circumstances, natural, and what it would be reasonable to apprehend he would do ; that it was negligence to let the horse loose in the manner in which it was let loose; and that this negligence caused the injury complained of. Under this state of facts, it cannot be said that the defendant did not exercise the same degree of care which might be expected from a prudent man towards his own horse. What he had reason to apprehend was, that the boy might attempt to water the horse, not that the boy would turn him loose, and the horse thereby become injured. If the defendant had had reason to apprehend that the boy would turn the horse loose, and that the horse would become injured in consequence thereof, a different question would be presented for our consideration. The case, however, only finds that he had reason to apprehend that the boy would attempt to water the horse, and that affords no evidence of lack of ordinary care and prudence.

There is another ground upon which the verdict must be set aside. The plaintiff was permitted to introduce evidence tending to show that the boy had been accustomed to care for horses put up at that place.

The defendant then offered to prove the custom of taking care of horses at that place, but the evidence was excluded. If the plaintiff seeks to make the defendant liable for the act of the boy because he was accustomed to care for horses at that barn, the defendant should have been permitted to show what that custom was. The plaintiff having shown the custom in part, the defendant was entitled to show the whole of it.

CUSHING, C. J. It appears from the case, that evidence was offered tending to show that the boy, by whose negligence the accident was occasioned, was accustomed to care for the horses that were left there, and that, under the circumstances, the defendant might reasonably have expected that the boy would have undertaken to water the horse if no directions were given him to the contrary. All this evidence was in fact evidence of the custom of that place, and of the same nature as that which was excluded, and which ought to have been admitted so as to have the whole custom before the court.

The court has found that the negligence of the boy occasioned the accident. I can see no way by which the defendant can be made responsible for this carelessness of the boy, unless the fact found, that he ought reasonably to have expected, under the circumstances, that the boy would interfere, amounted in fact to an employment of the boy, so as to make the defendant liable for the negligence of the boy as his servant.

I do not think that the court could safely infer what the defendant ought to have expected, without having the whole evidence of the custom of the place proved.

It appears to me, therefore, that the evidence was improperly rejected, and that, for this reason, the verdict must be set aside.

LADD, J. I also think the facts reported show no ground upon which the defendant can legally be held liable for the injury to the horse. The injury happened by reason of the negligence of the boy in turning it loose into the yard. Upon what ground was the defendant chargeable for that?

An amendment to the case states that the boy's interference with the horse was, under all the circumstances of his being at Mrs. Caverly's, and the circumstances and silence of the defendant in leaving the horse there, natural, and what it would be reasonable to apprehend he would do. Whatever may be meant by this singularly loose and conjectural statement, it is all I find to connect the defendant with the boy's act at all, unless it may be the fact that he knew the boy was at home. Was the boy (being sixteen years old) incompetent to water a horse? Nothing of that kind appears. Did the defendant know his incapacity? Of course that does not appear, because it does not appear that he was incompetent for that service. The amount of it is, that, having properly taken care of the horse himself, and given no directions that anything further should be done with the animal either by the boy or anybody else, he went away about his business, and this he did with

knowledge that there was a boy sixteen years old about the premises. If the boy had been a wolf and the horse a lamb, it might have been a want of ordinary care to go away without chaining the wolf, or putting the lamb in some place where it would be safe against his attacks. If it were found anywhere in the case or the amendment that a person of average prudence would not only have apprehended an interference by the boy with the horse (that is, that he would attempt to water the animal), but, further, would have foreseen that such interference would be likely to result in injury, so that he ought to have provided in some way that the interference should not occur, there would be ground to argue that the defendant was guilty of negligence in going away as he did without placing a guard over the horse, or in some other way providing for its safety as against the boy in his absence. As it is, I am entirely at loss to understand upon what conceivable ground it can be supposed that the defendant is responsible for the consequences of the boy's act in turning the horse loose into the yard.

*Verdict set aside.*